HELVERING, Commissioner of Internal Revenue, v. GENERAL UTILITIES & OPERATING CO.

No. 3720.

Circuit Court of Appeals, Fourth Circuit. Jan. 8, 1935.

Norman D. Keller, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Hugh C. Bickford, of Washington, D. C. (R. Kemp Slaughter, of Washington, D. C., and Joseph A. Slattery, of Philadelphia, Pa., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

## NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving income tax of the respondent for the calendar year 1928 in the sum of $128,342.07. The opinion of the Board of Tax Appeals will be found in 29 B. T. A. 934.

The facts were stipulated, and the Board set aside a finding of deficiency made by the Commissioner of Internal Revenue in the above-named amount, and the Commissioner filed this petition to review the action of the Board.

The respondent is a Delaware corporation, with its principal offices at Baltimore, Md. It is engaged in the business of owning securities of, managing, and operating public utility properties.

On January 1, 1927, the respondent acquired 20,000 shares of no par value of the common capital stock of another corporation, the Islands Edison Company. Said 20,000 shares of stock constituted one-half of the total common capital stock of said Islands Edison Company outstanding; the remaining 20,000 shares were owned by Gillet & Co., which company is not connected with respondent nor with respondent's stockholders. Respondent acquired said 20,000 shares of common capital stock of the Islands Edison Company at a cost to it of $2,000, and set up such stock on its books at a total value of $2,000.

During the month of January, 1928, Walter Whetstone, president of the Southern Cities Utilities Company, became interested in acquiring control of a Santo Domingo company, the stock of which was owned by the Islands Edison Company. Upon inquiring of Gillet & Co., Whetstone ascertained that the entire common stock outstanding of the Islands Edison Company was owned equally by Gillet & Co. and respondent. In a conference with J. C. M. Lucas, president of respondent, Whetstone discussed the purchase of the Santo Domingo Company or the Islands Edison Company common stock and as a result thereof was given permission to make an investigation of the properties of the Santo Domingo Company. Some time in February, 1928, Whetstone informed Gillet and Lucas that his plans required the delivery of all the common stock of the Islands Edison Company, and he was informed by Gillet that his firm was ready and willing to make the sale of the 20,000 shares, owned by Gillet & Co., of the Islands Edison Company common stock, and that he (Gillet) and Lucas, president of respondent, had agreed upon the price at which the sale would be made. Whetstone was informed by Lucas that, if a sale of the 20,000 shares of the common stock of the Islands Edison Company then owned by the respondent were consummated, such a sale would be made only after respondent had distributed the Islands Edison Company shares to its stockholders, because they had been advised by their attorneys that, if sale were made by respondent, it would be subject to a tax on any profit realized on the sale and that, when the proceeds of the sale were distributed to the stockholders, the stockholders would have to pay another tax thereon. The price to be paid for the properties and generally the terms and conditions of the sale were agreed upon by Gillet, Lucas, and Whetstone, but no contract was entered into by them; it being understood and agreed between them that respondent would make distribution of the stock of the Islands Edison Company to its stockholders and that counsel would prepare a written agreement embodying the terms and conditions of the said sale, said agreement to be submitted for approval to the stockholders of the Islands Edison Company after the distribution of said stock by the respondent. Lucas never held power of attorney to sell said stock for the respondent or its stockholders.

At a meeting of respondent's directors on March 22, 1928, the matter of respondent's stock holdings in the Islands Edison Company was discussed, and it was reported as the opinion of respondent's officers that the stock was worth at least $1,120,500, and that it should be appreciated on respondent's books to that figure. Further matters discussed and action taken at that meeting are recorded in the minutes as follows:

"The chairman also suggested to the meeting that the Company considered declaring a dividend on the Common Stock of the Company in the amount of $1,071,426.25, payable out of the appreciation so set up, the dividends to be paid in Common Stock of the Islands Edison Company at a value of $56.12½ a share.

"Whereupon the following resolutions were unanimously passed, viz:

"(a) that this Company appreciate on its books, its holdings of Common Stock of the Islands Edison Company in the amount of 20,000 shares in the amount of $1,120,500.00 and that the amount of this appreciation be credited to surplus arising from appreciation of assets;

"(b) that a dividend in the amount of $1,071,426.25 be and is hereby declared on the Common Stock of this Company payable in Common Stock of the Islands Edison Company at a valuation of $56.12½ a share, out of the surplus of the Company arising from the appreciation in the value of the Common Stock of the Islands Edison Company held by this Company, viz, $1,120,-500.00, the payment of the dividend to be made by the delivery to the stockholders of this Company pro rata, of certificates for the Common Stock of the Islands Edison Company held by this Company at the rate of two shares of such stock for each share of Company Stock of this Corporation; the stockholders entitled to be those of record at the close of business this day.

"There being no further business before the meeting, it then adjourned."

The respondent thereupon, on March 22, 1928, simultaneously entered on its books of account, in compliance with the foregoing resolution, the following entries, with full explanation following each entry, only part of which is here set forth:

| 1928 | | Dr. | Cr. |
|---|---|---|---|
| March 22. | Investments | $1,120,500.00 | |
| | Surplus arising from appreciation of assets | | $1,120,500.00 |
| March 22. | Surplus arising from appreciation of assets | 1,071,426.25 | |
| | Dividends payable | | 1,071,426.25 |
| | To record dividend declared on the Common Stock of the Company, payable in Common Stock of The Islands Edison Company at a valuation of $56.-12½ a share, * * * | | |

| March 22. | Dividends payable | 1,071,426.25 | |
|---|---|---|---|
| | Investments | | 1,071,426.25 |
| | To record payment of dividends declared March 22, 1928, on the Common Stock of this Company, such payment being made by delivery of 19,090 shares of the Common Stock of The Islands Edison Company at a valuation of $56.12½ per share. | | |

Thereupon, on March 22, 1928, in accordance with the resolution of the directors, the respondent distributed to its own stockholders 19,090 shares of the stock of the Islands Edison Company, such shares representing two shares of the Islands Edison Company stock theretofore owned by respondent for each one share of the 9,545 shares of respondent's own capital stock then outstanding. On the same date, March 22, 1928, the shares of stock were transferred on the stock records of the Islands Edison Company to the individuals receiving the distribution. After transfer of the 19,090 shares, there remained in the hands of respondent 910 shares of stock of the Islands Edison Company, which 910 shares were retained by it and a new certificate for such shares was issued to it on March 22, 1928.

On March 26, 1928, the stockholders of the Islands Edison Company (one of which was the respondent, owning 910 shares) and the Southern Cities Utilities Company, entered into a written contract of sale of the Islands Edison Company stock. At no time did respondent agree with Whetstone or the Southern Cities Utilities Company, verbally or in writing, to make sale to him or to the Southern Cities Utilities Company of any of said stock except the aforesaid 910 shares of the Islands Edison Company.

The fair market value of the Islands Edison Company stock as of March 22, 1928, was $56.12½ per share; said amount being computed in the contract dated March 26, 1928, as follows:

| | |
|---|---|
| Total Sales Price | $3,375,000 |
| Less: Liability for bonds and preferred stock outstanding | 1,130,000 |
| Net consideration for stock | $2,245,000 |

The net consideration, $2,245,000, divided by the number of shares, 40,000, gives a quotient of $56.12½ per share.

Respondent's earned surplus from operations as of December 31, 1927, was $1,360,515.96, which amount was not impaired by operating losses prior to March 22, 1928. Such surplus and all the capital of the respondent at December 31, 1927, were invested at cost in assets of the company, of which assets only $41,152 was cash. On March 22, 1928, the total cash of respondent was not more than $49,004.23.

The 910 shares of the Islands Edison Company common stock which were retained by the respondent after the distribution of 19,090 shares to its stockholders on March 22, 1928, were sold to the Southern Cities Utilities Company on May 14, 1928, and a profit of $46,346.30 was reported on the 1928 return filed by the respondent, computed as follows:

Sale price of 910 shares at $51.25 per share.. $46,437.30
Cost of 910 shares at 10¢ per share.......... 91.00

Profit reported in return..................... $46,346.30

The difference between the amount of $56.12½ per share, set forth above as the price stated in the contract of March 26, 1928, and the amount of $51.25 as shown in this paragraph as the amount received on May 14, 1928, when sale was made, is represented by brokerage charges, commissions, and other expenses incident to the consummation of the sale which were charged against the stockholders in accordance with the provisions of the contract.

The respondent received no cash or other property for the distribution of said 19,090 shares of the Islands Edison Company common stock.

Respondent, in making its income tax return for the calendar year 1928, reported no income from the disposition of the 19,090 shares of the Islands Edison common stock. The petitioner upon auditing the return, has held that the respondent corporation derived a profit of $1,069,517.25 from the disposition thereof; the explanation in the notice of deficiency being in part as follows:

"It is therefore held that your corporation realized a taxable gain of $1,069,517.25 upon the distribution of The Islands Edison Company stock in payment of the dividend of $1,071,426.25, as follows:

Distribution of 19,090 shares of stock at
market value of $56.125 a share in satisfaction of dividend obligation........ $1,071,426.25
Cost of stock distributed, $0.10 a share.. 1,909.00

Profit realized....................... $1,069,517.25"

There are two grounds upon which the petitioner urges that the action of the Board of Tax Appeals was wrong: First, that the dividend declared was in effect a cash dividend and that the respondent realized a taxable income by the distribution of the Islands Edison Company stock to its stockholders equal to the difference between the amount of the dividend declared and the cost of the stock. Second, that the sale made of the Islands Edison Company stock was in reality a sale by the respondent (with all the terms agreed upon before the declaration of the dividend), through its stockholders who were virtually acting as agents of the respondent, the real vendor.

As to the first contention, we are of the opinion that the action of the Board of Tax Appeals was correct. The resolutions of the board of directors of the respondent declaring the dividend, is capable of only one interpretation, that the dividend was payable not in cash but in the common stock of the Islands Edison Company. Under this resolution the stockholders could not, in the event of the failure to deliver the stock of the Islands Edison Company, have had the right to recover an equal amount of cash. In the case of State of Maryland v. Baltimore & Ohio R. Company, 6 Gill. (Md.) 363, a discussion will be found as to a dividend declared under a resolution analogous to the one here in question, and in that case a conclusion was reached similar to that reached by us here.

As to the second point raised by the petitioner, it is contended on behalf of the respondent that this point, not having been raised before the Board, cannot now be urged before us for the first time. We cannot agree with this conclusion. The correctness of the result reached by the Commissioner of Internal Revenue in determining the deficiency is the controlling factor, and not the method by which it was determined nor the reasons given for the determination. Hughes v. Commissioner (C. C.) 38 F.(2d) 755; Hurwitz v. Commissioner (C. A.) 45 F.(2d) 780; Helvering v. Gregory (C. C. A.) 69 F.(2d) 809.

Where all of the facts are before the Board of Tax Appeals, it may pass upon the correctness of the Commissioner's final determination. Christopher v. Burnet, 60 App. D. C. 365, 55 F.(2d) 527. Here the facts are undisputed, and the questions presented are purely questions of law upon the admitted facts. We are also of the opinion that

the issue first raised on appeal before us can be considered if "justice so requires." As was said by Judge Parker of this court in Virginia-Lincoln Furniture Corporation v. Commissioner, 56 F.(2d) 1028, 1033:

"In addition to this, it appears from the record that petitioner is entitled to relief; and we will not turn him out of court because he may have misconceived his remedy. As we have said before, courts exist to do justice, not to furnish a forum for the technical skill of counsel. In reviewing a decision of the Board, we are given broad powers to affirm, modify, or reverse it 'as justice may require' (26 USCA § 1226); and we do not think that justice requires that a petitioner with a meritorious case be turned out of court upon any such technical ground. See Underwood v. Commissioner (C. C. A. 4th) 56 F.(2d) 67."

See, also, Hurwitz v. Commissioner, supra; Superheater Co. v. Commissioner (C. C. A.) 38 F.(2d) 69; Seufert Bros. Co. v. Lucas (C. C. A.) 44 F.(2d) 528; Commissioner v. Norfolk Southern R. Co. (C. C. A.) 63 F.(2d) 304.

The reason for the rule, some times enforced by the courts, that an appellate court will confine itself to the issue presented and ruled upon by the court below, is based on the ground that the opposing party has no opportunity to resist the new issue by amendment of the pleadings or by additional proof. No such conditions exist here. No amendment to the pleadings is required to settle the issue here discussed, and no additional evidence could change the stipulated fact. Under the broad powers given us to review decisions of the Board, we have the power to pass on the question raised if the requirements of justice demand it. No good purpose could possibly be served by remanding the case to the Board for a further decision on a point that can be decided here on the stipulated facts.

The respondent was not taken by surprise by the raising of this question. It was discussed in the brief, on behalf of petitioner, filed October 19, 1934, and replied to in detail in the brief on behalf of respondent, filed November 10, 1934, prior to the oral argument before us.

■ When we come to consider the sale of the stock of the Islands Edison Company, we cannot escape the conclusion that the transaction was deliberately planned and carried out for the sole purpose of escaping taxation. The purchaser was found by the officers of the respondent; the exact terms of the sale as finally consummated were agreed to by the same officers; the purchaser of the stock stated that the delivery of all the stock was essential and that the delivery of a part thereof would not suffice; the details were worked out for the express and admitted purpose of avoiding the payment of the tax and for the reason that the attorneys for the respondent had advised that, unless some such plan was adopted, the tax would have to be paid; and a written agreement was to be prepared by counsel for the respondent which was to be submitted to the stockholders—all this without the stockholders, or any of them, who were ostensibly making the sale, being informed, advised, or consulted. Such admitted facts plainly constituted a plan, not to use the harsher terms of scheme, artifice, or conspiracy, to evade the payment of the tax. For the purposes of this decision, it is not necessary to consider whether such a course as is here shown constituted a fraud, it is sufficient if we conclude that the object was to evade the payment of a tax justly due the government.

The sale of the stock in question was, in substance, made by the respondent company, through the stockholders as agents or conduits through whom the transfer of the title was effected. The stockholders, even in their character as agents, had little or no option in the matter and in no sense exercised any independent judgment. They automatically ratified the agreement prepared and submitted to them.

Where a plan of action is proven, the courts will consider it as a whole rather than divide it into independent steps. "Two steps in a single transaction" cannot be treated as two transactions. Prairie Oil & Gas Co. v. Motter (C. C. A.) 66 F.(2d) 309; West Texas Refining & D. Co. v. Commissioner (C. C. A.) 68 F.(2d) 77.

■ In matters of taxation the substance rather than the form of the transaction will be regarded. U. S. v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180, and authorities there cited.

■ In substance, the transaction here involved was a sale of the stock of the Islands Edison Company by the respondent. Anticipatory arrangements, intended to circumvent the taxing statutes, are not looked upon with favor by the courts. As was said in MacQueen Co. v. Commissioner (C. C. A.) 67 F.(2d) 857, 858:

"The principle that substance and not form should control in the application of in-

come tax laws (United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Labrot v. Burnet, 61 App. D. C. 47, 57 F.(2d) 413; Reed v. United States (C. C. A.) 51 F.(2d) 941) may be invoked in the instant case. Although in form there were two sales of the corporate real estate, first, the purported sale by the petitioner to MacQueen, and, second, the sale by MacQueen to Hatfield, in substance the transaction was a sale by the petitioner to Hatfield through the agency of MacQueen. So also, although in form MacQueen was a trustee for the distribution of the profits earned by the sale of his own real estate to Hatfield, in substance he was the agent of the petitioner for the distribution of the profits from the sale of the corporation's real estate among its stockholders.

"The corporate tax rate imposed by the applicable taxing statutes is higher than the individual rate. The obvious purpose of the procedure, followed by the petitioner, its directors, and stockholders, was to take advantage of the lower tax rate permitted individuals and thereby avoid the corporate tax rate on the profits of the ultimate sale of the real estate. Such anticipatory arrangements and contracts, intended to circumvent the taxing statutes, are not looked upon with favor. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731; Phelps v. Commissioner (C. C. A.) 54 F.(2d) 289, certiorari denied 285 U. S. 558, 52 S. Ct. 458, 76 L. Ed. 946."

The decision of the Board of Tax Appeals is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed.