## TIMBERLAKE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5012.

Circuit Court of Appeals, Fourth Circuit.

Argued Nov. 20, 1942.

Decided Dec. 8, 1942.

Richard E. Thigpen, of Charlotte, N. C., for petitioner.

William A. Clineburg, Sp. Asst. Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. Atty. Gen., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges and COLEMAN, District Judge.

SOPER, Circuit Judge.

This petition for a review of a decision of the Board of Tax Appeals raises the question whether J. E. Timberlake, the taxpayer, received taxable income in 1936, when he purchased from a closely held corporation, of which he was a stockholder, shares of stock in another corporation at less than their fair market value.

Thomas and Howard Company of Columbia, South Carolina, hereinafter called the Columbia Company, bought 775 shares of the stock of Thomas and Howard Company of Charleston, South Carolina, engaged in the wholesale grocery business, hereinafter called the Charleston Company, for $77,500 in 1928, and thereafter carried its investment on its books at cost. On November 5, 1936, the directors of the Columbia Company formally authorized the sale of this stock to its stockholders at $100 per share, and four days later the sale was consummated and the stock was transferred to four persons, who owned all of the Columbia stock, in substantial proportion to their holdings, varied only to avoid the issuance of fractional shares. In this transaction the taxpayer herein, who was one of the stockholders of the Columbia Company, bought 184 shares of the stock of the Charleston Company for $18,400. The Commissioner of Internal Revenue held that the stock was worth $200 per share at that time, and that by the acquisition thereof the taxpayer in legal effect received a taxable dividend from the Columbia Company in the sum of $18,400. On review of this decision, the Board approved the Commissioner's determination in principle, but found as a fact that the value of the stock at the time of the purchase was $150 per share, and accordingly reduced the taxpayer's deficiency.

The Commissioner also found that the Columbia Company had a substantial surplus on January 1, 1936 and on December 31, 1936, out of which dividends could have been paid; and the Board specifically found that on December 31, 1936 the Company, after the payment of cash dividends and federal income tax, had a surplus of $263,-618.43.

The taxpayer contends, in the first place, that the value of the stock did not exceed the purchase price at the time of the sale, resting his position largely on the opinion of a witness engaged in a similar business who was familiar with the operations of the corporations involved in this case. He based his opinion in large measure upon the average earning of the Charleston Company of $10,575.09 for the years 1928 to 1936, and a book value of the company on December 31, 1936 of $168.44 per share, consisting in great part of accounts receivable of uncertain value. But it cannot be denied that there was, to say the least, substantial evidence to support the Board's finding on this point, for the evidence showed that the Charleston Company paid a 10% cash dividend in January, 1936 and a 40% cash dividend in December, 1936; that its stock had a book value of $200 per share in November, 1936; that 68 of its 1000 shares were sold for $150 per share in February, 1937; and that the November sale at $100 per share, now under consideration, represented a transfer of corporate assets at cost by the Columbia corporation to the four persons who held all of its stock. These findings of fact are binding on this court, and hence we direct our attention to the Board's conclusion that this transfer of assets by the Columbia Company at less than their market value involved a distribution to its stockholders in the nature of a taxable dividend. The sweeping definition of gross income in § 22(a) of the Revenue Act of 1936, Ch. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 825, which finds its counterpart in other revenue acts, includes gains, profits and income from dividends or from any source whatsoever. Treasury Regulation 94, Article 22(a)-1 provides in part as follows:

"Art. 22 (a)-1. What included in gross income.

\* \* \* \* \* \*

"If property is transferred by a corporation to a shareholder, or by an employ-

er to an employee, for an amount substantially less than its fair market value, such shareholder of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its basis shall be the amount paid for the property, increased by the amount of such difference included in gross income. This paragraph does not apply, however, to the issuance by a corporation to its shareholders of the right to subscribe to its stock, as to which see Article 22 (a)-8."

In 1939 this regulation was amended so as to specifically provide, amongst other things, that regardless of whether the transfer was in the guise of a sale or exchange, the stockholder shall include in gross income the difference between the amount paid for the property and its fair market value to the extent that such difference is in the nature of a distribution of earnings or profits taxable as a dividend.

Article 22 (d) provides that distributions by corporations shall be taxable to shareholders as provided in § 115, 26 U.S.C.A. Int.Rev.Acts, page 868; and § 115 (a) defines a dividend as any distribution made by a corporation to its shareholders whether in money or in property (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year.

We think there can be no doubt that the excess of value over the purchase price of the stock was taxable income of the stockholders in this case under the statutes and regulations referred to; and for the purposes of this decision we accept the Regulation in force in 1936 as a correct interpretation of the statutes since its long continuance and application to frequent reenactments justifies the inference that it has received Congressional approval. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52. It is of no importance that the transfer assumed the form of a sale and that there was no express declaration of a dividend. The substance of the transaction determines its character for purposes of taxation; and we need only inquire whether the Columbia corporation transferred to the taxpayer and its other stockholders without cost a part of its earnings and profits so that they were severed from and ceased to be a part of the corporate property in which the stockholders had an indirect undivided interest and became their separate and independent holding, of which they could dispose at will. Certainly this was the effect of the sale, for the increment of value represented by the difference between the purchase price of the stock paid by the corporation in 1928 and its value in 1936, when it was sold at cost to the stockholders, was transferred by the corporation to them as effectually as if a one-third interest in each share of the Charleston stock had been distributed to the Columbia shareholders in the form of dividends. The existence of a surplus from which such a dividend could lawfully be paid was clearly shown.

This conclusion is clearly indicated by the principles enunciated in Palmer v. Commissioner, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50. They may be summarized as follows: A taxpayer does not subject himself to income tax by the mere purchase of property even at less than its true value, and tax gain does not accrue to him until he sells or otherwise disposes of it. Consequently a sale of corporate assets by a corporation to its stockholders, although a distribution of its property in a literal sense, does not necessarily fall within the statutory definition of a dividend, for it may not result in such a diminution of its net worth as to effectuate a distribution of its property. But, on the other hand, such a sale of corporate assets if made for substantially less than the value of the property sold is as effective as the formal declaration of a dividend to stockholders, if in its purpose or effect it actually brings about a distribution of corporate earnings amongst them. See also, Eastern Carbon Black Co. v. Brast, 4 Cir., 104 F.2d 460, 464; Choate v. Commissioner, 2 Cir., 129 F.2d 684.

The taxpayer relies particularly on the decisions in Taplin v. Commissioner, 6 Cir., 41 F.2d 454, Commissioner v. Van Vorst, 9 Cir., 59 F.2d 677, Helvering v. Bartlett, 4 Cir., 71 F.2d 598, and Commissioner v. McCloskey, 5 Cir., 76 F.2d 373. All of these decisions were rendered prior to the decision of the Supreme Court in Palmer v. Commissioner, supra, and insofar as they differ from the rule announced in that case must of course be disregarded. Moreover certain of these earlier decisions are distinguishable on the facts. Thus, Taplin v. Commissioner related to a sale of corporate

assets by a corporation to its stockholders at less than their value, but the stock was sold to only three out of eight stockholders in proportions which took no account of the size of their stock holdings, and there was no showing that the corporation had any earnings out of which dividends could properly have been paid. The court held that such a transaction, although subject to severe scrutiny, did not involve a distribution in the nature of a dividend. Helvering v. Bartlett and Commissioner v. McCloskey are also distinguishable, since in each case the corporation had no proprietary interest in the stock purchased by its stockholders but acted merely as their representative in the acquisition thereof.

The decision of the Board is affirmed.