*Decisions will be entered under Rule 50.*

ESTATE OF IDA S. GODLEY, DECEASED, PAUL F. GODLEY AND JOHN W. YOUNG, JR., COEXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35057. Promulgated March 19, 1953.

*Allen S. Hubbard, Esq.,* and *John Westbrook Fager, Esq.,* for the petitioners.

*Stanley W. Herzfeld, Esq.,* for the respondent.

1086

OPINION.

HILL, *Judge:* Although the first issue here presented by the parties had its birth in questions presented in previous litigation before this Court, it comes before us here in a new and unique form. The problem is this. Should the distributing corporation's statutory earnings or profits be reduced, because of a dividend in kind of property which has appreciated in value over cost or adjusted basis, by the fair market value of the property at the time of distribution or by the cost or adjusted basis of the property distributed?

The genesis of the problem before us was the holding in *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200. In 1927 General Utilities acquired 20,000 shares of Islands Edison stock for a consideration of $2,000. The stock appreciated in value by over $1,000,000. The corporation wrote up this appreciated value on its books and the following year distributed the appreciated stock as a dividend in kind. Soon after receipt of the dividend all of the shareholders of General Utilities sold their Islands Edison stock at $56.12½ per share and General Utilities reported a gain on 910 shares, which it had retained from the block of shares and sold directly, but not on the 19,090 shares distributed to the stockholders. The Commissioner sought to tax the difference between the cost of $2,000 and the selling

price of all 20,000 shares as income to the corporation. Before the Board of Tax Appeals, the Commissioner, relying upon the *Kirby Lumber Co.* case,[1] argued that the form of the dividend declaration indebted the corporation to its shareholders in the amount of $1,071,-426.25. The Board held that the dividend was intended as a dividend in kind and resulted in no taxable income to General Utilities. The case was appealed, 74 F. 2d 972, with the Commissioner adding a new argument to the effect that the sale of the securities by the stockholders was in actuality a sale by the corporation through its shareholders with all terms agreed before the declaration of the dividend. The Board of Tax Appeals was affirmed upon the basis of its decision but on the matter newly raised the Commissioner was upheld. On certiorari to the Supreme Court, the Commissioner retained his two former arguments before the courts below and added yet a third: that where a corporation pays a dividend in property which has increased in value it thereby realizes the gain on its investment, a point conceded by the Commissioner to a contrary effect before the Board of Tax Appeals. No direct reference was made in the opinion by Justice McReynolds to the third argument made by the Commissioner but there are substantial reasons to believe that the Supreme Court rejected it for the Court refused to remand the cause for further findings of fact and held that both tribunals below had already decided that the taxpayer derived no taxable gain from the distribution among its stockholders of the dividend in kind. The Supreme Court's decision that the dividend was in terms of property rather than dollars was significant only because a dividend of property was there regarded as incapable of constituting *realization* of income to the distributing corporation. There has been some qualification to the general rule laid down in *General Utilities, supra.* See *Commissioner* v. *First State Bank of Stratford,* 168 F. 2d 1004; *Guinness* v. *United States,* 73 F. Supp. 119, certiorari denied 334 U. S. 819; *Commissioner* v. *Transport Trading & Terminal Corporation,* 176 F. 2d 570, certiorari denied 338 U. S. 955, rehearing denied 339 U. S. 916. However, the exceptions to the rule have no applicability to our present problem. It is safe to say then that the *General Utilities* case holding still stands for the proposition that appreciation in value over cost or adjusted basis of property distributed as a dividend in kind does not constitute a realization of income to the distributing corporation.

The theory of the *General Utilities* case has been generally applied to computation of a corporation's statutory earnings or profits even where no question of the effect on its taxable net income is involved, e. g., *National Carbon Co.,* 2 T. C. 57, and *Estate of H. H. Timken,* 47 B. T. A. 494, affd. 141 F. 2d 625, where a dividend in kind was not

---

[1] *United States* v. *Kirby Lumber Co.,* 284 U. S. 1.

regarded as a taxable dividend to the shareholders except in so far as there were sufficient statutory earnings or profits (computed without regard to increase in value of the *res* distributed in kind over cost) from other sources at the time of the distribution in kind to cover its fair market value. Thus it is seen that the treatment of distributions in kind of appreciated property for the purpose of determining statutory earnings or profits and realization of taxable net income have been parallel and consistent.[2]

However, some confusion has been caused in this field by a divergent theory which may be stated thusly, if the property distributed in kind was originally purchased out of post-1913 earnings then, without regard to the amount of statutory earnings or profits at the time of the distribution, the full market value of the distribution is taxable as a "dividend." *Commissioner* v. *Wakefield*, 139 F. 2d 280. See also in this connection *Binzel* v. *Commissioner*, 75 F. 2d 989, and *Timberlake* v. *Commissioner*, 132 F. 2d 259. In these last two cited cases it did not appear that the distributor did not have sufficient earnings or profits to support a dividend to the extent of the fair market value of the property distributed, and hence they give no support to the rationale of the *Wakefield* decision.

The rationale of the court in the *Wakefield* case is apparently based upon the notion that once property is purchased out of earnings it continues to represent statutory earnings or profits even though the actual statutory earnings or profits of the corporation are far below its value at the time of its distribution in kind. This is borne out by the following language in the opinion:

What the partnership received was not the cash paid for the stock, but the stock itself. The securities clearly did not represent capital, nor did their distribution deplete capital. The distribution was made possible only by the expenditure of earnings and profits, and it depleted only earnings and profits. Hence the transaction fell within the definition of § 115 (a) of the Revenue Act of 1936, and constituted a dividend * * *.

The opinion is then premised on the existence of a separate fund of earnings or profits regarded as an entity out of which property could be bought and assumes always that the fund was used to purchase the property distributed in kind rather than expended for other business purposes.

Having decided that the distribution was a "dividend" because the property was purchased from earnings or profits and hence qualified under section 115 (a), the court then relied upon section 115 (j) as an independent measure of taxability to the shareholder-distributees.

---

[2] For an elaborate listing of cases which have followed the *General Utilities* rule in computing taxable net income and ascertaining the effect on earnings or profits of both liquidating and nonliquidating distributions, see Molloy, Some Tax Aspects of Corporate Distributions in Kind, 6 Tax L. Rev., 57, 60, Note 20.

By elimination of the first premise, that is, that the purchase price of the asset distributed in kind came out of earnings or profits, the argument is somewhat improved and identical with that adopted here by the respondent. Thus it is argued that where statutory earnings or profits cover the cost or adjusted basis of a distribution in kind the distribution in kind is "out of earnings or profits" under section 115 (a)[3] and backed by earnings or profits "to the extent" of cost or adjusted basis under section 115 (b)[4] and hence established as a dividend. Once section 115 (a) and (b) are used to characterize the distribution as a "dividend," then section 115 (j)[5] is relied upon to tax the distribution in kind to the distributees at its fair market value. See Dividends in Kind: Their Tax Aspects, New York University Ninth Annual Institute on Federal Taxation, 1029, 1045, et seq., on which the respondent here relies. A theory somewhat similar is found in a concurring opinion in *Guinness* v. *United States*, *supra*, at page 219.

If we follow the respondent's argument we must hold that what are not realized and recognized earnings and profits to the distributor are a distribution of realized and recognized earnings or profits for the purpose of imposing a "dividend" tax on the distributees.

Examination of the respondent's argument indicates that he believes the purpose of section 115 (a) and (b) is to merely characterize a distribution as a "dividend." Under his theory section 115 (j) becomes all important and assumes to establish an independent standard of taxability in so far as the stockholder-distributee is concerned. In other words, all correlation between taxability to the shareholder-distributees and effect upon statutory earnings or profits of the corporation disappears. But if he is correct, why should the theory be limited to situations where earnings cover the cost or adjusted basis of the distributed property? Should not $1 of statutory earnings

---

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), *without regard to the amount of the earnings and profits at the time the distribution was made.* * * *

[4] (b) SOURCE OF DISTRIBUTIONS.—For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113. The preceding sentence shall not apply to a distribution which is a dividend within the meaning of the last sentence of subsection (a).

[5] (j) VALUATION OF DIVIDEND.—If the whole or any part of a dividend is paid to a shareholder in any medium other than money the property received other than money shall be included in gross income at its fair market value at the time as of which it becomes income to the shareholder.

or profits bring into operation the independent measure of taxability to the distributees for which the respondent argues? And what happens when the statutory earnings or profits of the distributor are less than the cost or adjusted basis of the property distributed? Analysis indicates 2 portions of the fair market value to be taken into consideration, the difference between $1 and the cost or adjusted basis of the property and the excess of fair market value over cost or adjusted basis. If cost or adjusted basis and fair market value were equal, is it not doubtful whether an approach such as that here adopted by the respondent would support the excess of cost over $1 statutory earnings or profits as a taxable dividend? Then why should the fact that there is also unrealized appreciation change the rule? If we follow respondent's argument apparently the difference between $1 and cost or adjusted basis should be regarded as a return of capital and the excess of fair market value over cost or adjusted basis as a taxable dividend. The ultimate logic of the respondent carries him to the position where all excess of fair market value over cost or adjusted basis must be regarded as a taxable dividend to the distributees upon a distribution in kind regardless of the amount of earnings or profits at the time. Thus if statutory earnings or profits are zero or a deficit, the invalidity of the argument is clear. So also its invalidity is clear though the distributor may have but $1 of earnings or profits or earnings or profits equal to the cost or adjusted basis of the asset distributed.

Far from establishing the independent measure of taxability for which the respondent argues, we believe section 115 (j) was intended as a mere valuation provision. Its legislative history is scant, if not nonexistent. See Paul, Selected Studies in Federal Taxation, p. 152, et seq. Section 115 (j) is meaningless considered independently. Sections 115 (a) and (b) alone define "dividend." A dividend is a distribution "out" of earnings or profits "to the extent thereof."

Unless the taxation of corporate distributions in kind is to be a wilderness some correlation between taxability to the shareholders and effect on corporate earnings or profits is essential. See Paul, Selected Studies in Federal Taxation, p. 183. In *August Horrmann*, 34 B. T. A. 1178, the Board of Tax Appeals pointed this out in dealing with a slightly different issue in the following language:

The provisions of the statute relating to distribution are concerned with the effect on the stockholder of the distribution and not with its effect on the corporation. The aim is to tax to the stockholder the income realized by him through the distribution of earnings or profits accumulated after March 1, 1913. This aim would be defeated if a nontaxable stock dividend were treated as diminishing the amount of earnings and profits available for subsequent distribution. *Conversely, if a stock dividend were taxable and corporate earnings were not thereby diminished, the imposition of the tax on a subsequent distribution in cash or property would result in a double tax.* A correlation between

*taxability to the stockholder and the effect on corporate earnings or profits avoids these situations. It does no violence to the statute, but rather harmonizes its provisions; in fact, it accords with what we believe was the intent of the statute as clarified by subsequent enactments hereinafter discussed.* It also accords with the construction that has been given to the somewhat analogous question of the effect of stock issued in connection with a reorganization. * * * [Emphasis supplied.]

Nothing in the respondent's present argument is so persuasive as to attack the validity of the reasoning in the *Horrmann* opinion.

To support his position under this issue the respondent places his chief reliance upon the case of *R. D. Merrill Co.*, 4 T. C. 955. There the shareholder-distributee, R. D. Merrill Company, a personal holding company which owned 50 per cent of the stock in T. D. & R. D. Merrill, Inc., received a dividend in kind which had a fair market value on the date of its distribution of $202 and an adjusted cost basis to T. D. & R. D. Merrill, Inc., of $57,316.67. There we held earnings or profits of the distributor to be reduced by the adjusted cost basis of the asset and the dividend taxable to the distributee to the extent of only $202 under section 115 (j).

Whether or not the logical application of the rule enunciated above would mean that only cost or adjusted basis should be deducted from earnings or profits in the case of appreciated as well as depreciated property, as contended by respondent, we are impelled by a long and consistent line of cases by this Court with affirmances thereof by the Courts of Appeal and the Supreme Court to hold on the facts in the instant proceeding that the fair market value of the distributed property is taxable as a dividend to the extent of the earnings or profits (without increase as a result of appreciation in value over cost of the property distributed) of the distributing corporation.

To permit the respondent's argument to prevail here would permit him to accomplish indirectly what the court in *General Utilities* prevented him from doing directly, for the effect of respondent's argument is to write up the earnings or profits of the distributing corporation by the amount of the *unrealized* appreciation in the property distributed as a dividend in kind. For these reasons we must reject the respondent's argument and on this issue we hold for the petitioners.

The cases cited above point out the rule—a distribution in kind by a corporation is out of its earnings or profits and therefore a dividend when the earnings or profits (without increase as a result of appreciation in value over cost of the property distributed) are sufficient in amount to cover a charge equal to the fair market value of the distribution. To the extent that the earnings or profits are insufficient for this purpose the stockholders have received a distribution in excess of earnings or profits and the amount of this excess is applied

to reduce the basis at which the shareholder-distributees hold their stock and any excess over basis is taxable to them as a capital gain under the provisions of section 115 (d).[6]

If we understand the alternative argument of the respondent it means this—a property distribution to the extent that the fair market value is not covered by earnings or profits must be taxed to the shareholders as "other income" under the provisions of section 22 (a). This follows from the respondent's contention that a corporation has only 2 sources out of which it can make a distribution, that is, its paid-in capital and its earned surplus. Because the respondent, who still confuses accounting per books with tax accounting, follows his major premise with the minor premise that since the distribution here involved was not out of book capital the portion of the distribution in excess of Southern's earnings and profits must be "other income" taxable under section 22 (a).

The petitioners base their argument in opposition to the respondent upon the language of section 22 (e) of the Internal Revenue Code, which provides:

(e) DISTRIBUTIONS BY CORPORATIONS.—Distributions by corporations shall be taxable to the shareholders as provided in section 115.

The term "distributions" is all inclusive and both denotes and connotes all that a corporation can pay out to its shareholders in their capacity as distributees. Thus the term is broad enough to include distributions qualifying as a dividend within the meaning of the Internal Revenue Code and capital, both in the usual accounting sense of that term and in the sense in which it is used in section 115 (d) of the Code. Thus it is seen that distributions by corporations have been taken by Congressional action out of the operation of section 22 (a) and placed for tax treatment under the provisions of section 115. The regulations bear this out. Section 29.115-4 of Regulations 111, under the caption "Distributions Other than a Dividend," provides "Under section 115 (d), any distribution (including a distribution out of earnings or profits accumulated before March 1, 1913) other than * * * shall be applied against and reduce the adjusted basis of the stock * * *," and there is no suggestion in the regulations that section 115 (d) is inapplicable unless the distribution impairs the capital of the corporation shown per books.

---

[6] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. This subsection shall not apply to a distribution in partial or complete liquidation or to a distribution which, under subsection (f) (1), is not treated as a dividend, whether or not otherwise a dividend.

From the above it is seen that appreciation in value of the stock here involved in so far as fair market value exceeds the earnings or profits of Southern must be used under section 115 (d) to reduce the basis at which the petitioners' decedent herein held her stock and in so far as the basis of her shares is exceeded, her estate will be taxed at capital gains rates on any excess over basis received.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, J., did not participate in the consideration of or decision in this report.