**COMMISSIONER OF INTERNAL REVENUE**

v.

**HIRSHON TRUST et al.**
**No. 207, Docket No. 22940.**

United States Court of Appeals
Second Circuit.

Argued April 13, 1954.

Decided May 17, 1954.

**524**

Melva M. Graney, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Sp. Assts. to the Atty. Gen., of counsel), for petitioner.

John P. Allison, New York City (Silverson & Allison, New York City, of counsel), for respondent.

Before CLARK, HINCKS and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

The question raised by this petition is the extent to which the fair market value of a corporate distribution in kind is taxable to the shareholder-distributees as ordinary dividend income where the earnings and profits of the distributing corporation are sufficient to cover the adjusted cost of the property distributed but are insufficient to cover its full fair market value at the time of the distribution.

In 1947, Southern Natural Gas Company (hereinafter called "Southern") distributed as dividends to its shareholders (of whom Respondent was one) $2,113,722.03 in cash and 1,409,162 shares of common stock of Southern Production Company, Inc. (hereinafter called "Southern Production"), a wholly owned subsidiary of Southern. The Southern Production stock had an adjusted cost value on Southern's books of $3,199,950. Its fair market value at the time of distribution was $8,983,407.75. Southern had earnings or profits before these distributions amounting to $5,674,586.32. The respondent taxpayer's proportion of these distributions amounted to $12,680.62, of which $2,416.87 represented its share of the cash distribution and $10,263.75 its share of the distribution payable in Southern Production stock, taken at market value.

In reporting these distributions in its federal income tax return for 1947, the taxpayer proceeded on the premise that the market value of the Southern Production stock was taxable to Southern's shareholders as dividend income *only* to the extent of Southern's earnings and profits, determined *without regard* to any appreciation in the value of Southern Production stock above its adjusted cost basis on Southern's books. The Commissioner, however, ruled that the Southern Production stock was taxable to Southern's shareholders as ordinary income to the full extent of its fair market value at the time of receipt, and accordingly determined that the taxpayer had understated its income for 1947. The Tax Court sustained the tax-

payer's position, holding that the market value of Southern Production stock in excess of Southern's earnings and profits, as computed on the basis of its adjusted cost on Southern's books, was applicable first to reduce the basis of the shareholders' Southern stock and beyond that was taxable as a capital gain as provided in § 115(d).

The controlling sections of the Internal Revenue Code are § 22(a) and (e), 26 U.S.C. § 22, and § 115(a), (b), (d) and (j), 26 U.S.C. § 115. Their relevant portions are printed in the margin.[1]

The taxpayer's position is that the provisions of § 115(a), defining a dividend as any distribution made by a corporation "out of its earnings or profits accumulated after February 28, 1913," also measure the extent to which a distribution in kind is subject to dividend taxation in the hands of the shareholders, that is that the market value of the property distributed is not taxable as "dividend" income beyond the extent of the corporation's "earnings or profits," any excess value being subject to a different kind of tax treatment as held by the Tax Court.

More specifically, the taxpayer contends that after eliminating from Southern's "earnings or profits" the cash dividends of $2,113,722.03, which are concededly taxable to Southern's shareholders as ordinary income to their full extent, the value of the Southern Production stock ($8,983,407.75) is taxable as a dividend only to the extent of Southern's remaining "earnings and profits," viz., $3,560,864.29. The remaining value of the Southern Production stock, $5,422,543.46, it is contended, is subject to the other tax treatment indicated above.

The Commissioner's position is that all that is excluded from individual income taxation under § 115 are distributions to shareholders which impair the capital of the distributing corporation. In essence his argument is that we should distinguish between the value of an asset in the hands of the corporation for the purpose of determining surplus or capital impairment, and the value of the asset for tax purposes when distributed to the shareholders. In the first aspect, so the Commissioner argues, the value of the asset is its historical cost to the corporation, without regard to any subsequent appreciation in value; in the second aspect, the worth of the asset is its full market value at the time of receipt by the shareholders; and under the statute there is no necessary *money* correlation between these two

1. Section 22. Gross income

"(a) *General definition*. 'Gross income' includes gains, profits, and income derived from * * * dividends, * * * or gains or profits and income derived from any source whatever. * * *
* * * * *

"(e) *Distributions by corporations.* Distributions by corporations shall be taxable to the shareholders as provided in section 115."

Section 115. Distribution by corporations

"(a) *Definition of dividend*. The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913 * * *.

"(b) *Source of distributions*. For the purposes of this chapter every distribu-

tion is made out of earnings or profits to the extent thereof * * *.
* * * * *

"(d) *Other distributions from capital.* If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. * * *
* * * * *

"(j) *Valuation of dividend.* If the whole or any part of a dividend is paid to a shareholder in any medium other than money the property received other than money shall be included in gross income at its fair market value at the time as of which it becomes income to the shareholder."

sets of values. Therefore, it is contended, once it is shown that a distribution in kind has left the corporate capital intact, the distribution is "out of" the corporation's "earnings or profits," and hence a dividend under § 115(a), which under § 115(j) becomes taxable to the shareholders to the full extent of its market value at the time of receipt.

More specifically, the Commissioner contends that Southern's earned surplus ($5,674,586.32) being greater than the total value ($5,313,672.03) of the distributed cash and Southern Production stock (at its adjusted cost to Southern), the entire distribution constituted a dividend, and as such the part represented by Southern Production stock, equally with the cash part, was taxable as ordinary income to the full extent of its fair market value, *viz.*, $8,983,407.75.

We are thus called upon to decide between these two opposing views of the taxing pattern established by § 115. The decisions of the Tax Court have fairly consistently supported the taxpayer's position. Estate of Godley v. Commissioner, 1953, 19 T.C. 1082, relating to the identical distributions here involved, and upon which the decision below was based; Dean v. Commissioner, 1947, 9 T.C. 256; Estate of Acheson, 1944, 3 T.C.M. 1242; and in its result Beach Petroleum Corp. v. Com'r, 1946, 5 T.C.M. 638.

The cases in the Federal Courts, however, do not give us any clear signal. In Binzel v. Commissioner, 2 Cir., 75 F.2d 989, certiorari denied 1935, 296 U.S. 579, 56 S.Ct. 90, 80 L.Ed. 409, relied on by the Commissioner, it did not appear whether there was sufficient surplus to cover the full market value of the distribution in kind. If there was, then that case did not reach the issue before us. If there was not, we would hesitate to accept the alternative basis for decision, namely, that the distributed property was *acquired* out of post-1913 earnings or profits and retained that character upon distribution. See Paul,

Selected Studies in Federal Taxation, 2d Series (1938), pp. 174–176; Molloy, Some Tax Aspects of Corporate Distributions in Kind, 6 Tax L.Rev. 57, 74–76 (1950). For the same reason we find Commissioner of Internal Revenue v. Wakefield, 6 Cir., 1943, 139 F.2d 280, also cited by the Commissioner, not persuasive. The concurring opinion of Judge Whitaker in Guinness v. United States, 1947, 73 F.Supp. 119, 109 Ct.Cl. 84 *is* an acceptance of the Commissioner's position, but the decision of the majority went upon other grounds, based on facts not involved here. In Commissioner v. Timken, 6 Cir., 1944, 141 F.2d 625, cited by the taxpayer, a dividend in kind was held not taxable as income to the stockholder, but there the *cost* of the property distributed was not covered by any earnings or profits (which had been exhausted by prior cash dividend distributions), and in effect constituted a distribution of *capital.*

We also consider the legislative history of § 115, which has been referred to in the Respondent's brief, wholly unclear. Finally, we find tax lawyers, who have written on the subject, on both sides of the question. See Paul, Selected Studies, etc., supra, 165–185, and Raum, Dividends in Kind: Their Tax Aspects, 63 Harv.L.Rev. 593–609 (1950).

We turn then to examine the provisions of the Internal Revenue Code themselves. Section 22(a) defines "gross income" to include "dividends * * * or gains or profits and income derived from any source whatever." No contention is made here that the Southern Production stock constituted "income" to Southern's shareholders otherwise than as a "dividend." Section 22(e) provides that corporate *distributions* are taxable to the shareholders as provided in § 115. So far as here relevant, § 115(a) defines a *dividend* as "any distribution made by a corporation to its shareholders, *whether in money or in other property,*[2] (1)

---

2. Italics, wherever used in this opinion, have been supplied.

out of its earnings or profits accumulated after February 28, 1913 * * *."

Both parties here agree with the premise of the Tax Court in the Godley case, citing General Utilities & Operating Co. v. Helvering, 1935, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154, that under § 115(a) unrealized appreciation in corporate assets may not be reckoned in "earnings or profits"; or, as the Commissioner puts it, in computing "earnings or profits" corporate assets are to be taken at historical cost. Cf. R. D. Merrill Co. v. Commissioner, 1945, 4 T.C. 955, wherein the Tax Court held that in determining to what extent a distribution made in the stock of another corporation, which had *depreciated* in value below its cost to the distributing corporation, reduced earnings and profits available for later distributions, the earnings and profits of the distributing corporation should be charged with the *cost* of the stock rather than merely its depreciated value. The "capital impairment" statutes of some states permit unrealized appreciation to be calculated in determining corporate surplus available for dividends. *E. g.*, § 58, N.Y. Stock Corporation Law, McKinney's Consol.Laws, c. 59; Randall v. Bailey, 1942, 288 N.Y. 280, 43 N.E.2d 43. Other states, perhaps more in keeping with sound accounting and business practice, do not permit unrealized appreciation to be counted in computing corporate surplus, in determining which the corporate assets are to be reckoned at their historical cost. *E.g.*, Ill.Rev. Stats.1951, c. 32, § 41(c), S.H.A.Ill. ch. 32, § 157.41(c); Penn.Stats., Tit. 15, §§ 2852–701, subd. A(1), 702 (Purdon 1936). If the matter be still open under the General Utilities case, supra, we agree with the Tax Court's conclusion in this respect, and think it is this latter view which Congress has adopted in § 115(a).

To continue with § 115, Section 115(b) entitled "Source of distributions" states that "every *distribution* is made out of earnings or profits to the extent thereof

* * *." Section 115(d), entitled "Other distributions from capital" provides that if " * * * any distribution * * * is not a dividend * * *" it shall be applied to reduce the basis of the shareholders' stock in the distributing corporation, and any excess shall be taxable as a capital gain. And finally § 115(j) provides: "If the whole or any part of a *dividend* is paid to a shareholder in any medium other than money the property received other than money *shall be included in gross income at its fair market value at the time as of which it becomes income to the shareholder."*

As we see it, the real nub of the dispute between the taxpayer and the Commissioner comes down to the question of whether, as the taxpayer contends, § 115(a) defining dividends as those corporate distributions which are made "out of the earnings or profits," also measures the amount of a distribution in kind which is subject to ordinary income taxation as a dividend under § 115 (j). The taxpayer's position is, in effect, that since under § 115(a) unrealized appreciation in the value of the property to be distributed is to be excluded in measuring the corporation's earnings or profits for the purpose of determining the extent to which the distribution is a dividend, likewise unrealized appreciation should be excluded in determining how much of the distribution is subject to ordinary income taxation as a dividend. The taxpayer achieves what it claims to be the proper result by applying the amount of the earnings or profits of the corporation against the *appreciated* value of the distributed property, and treating any excess in such value as a capital distribution rather than a dividend.

We do not think that the taxpayer's position withstands analysis. Fundamentally, it involves measuring a dividend distribution for taxation purposes differently from the way Congress has defined a dividend. Thus, as we have seen, in determining whether the dis-

tribution of an asset in kind is a dividend under § 115(a) the earnings and profits of the corporation are charged with the *cost* of the asset to be distributed, without regard to any unrealized appreciation in its value. Yet when it comes to determining the nature of the distribution from the point of view of its taxability the taxpayer would have us charge the same asset against the corporate earnings or profits at its *appreciated value.* But surely the *nature* of a distribution under § 115 is not so elusive. If a distribution is a dividend when declared by the corporation, it is difficult to see how it can in part be something else when received by the stockholders. Stated otherwise, if corporate earnings and profits are to be *charged* with the appreciated value of a distributed asset, we think they should also be *credited* with that value. But if that were done here the problem we have would disappear. It is only by measuring the extent of the dividend differently in the hands of the shareholders from the way in which § 115(a) requires it to be measured in the hands of the corporation, that the taxpayer has a case.

No doubt Congress could have enacted two such different standards of measurement, but we do not think that it has done so, and we are left unpersuaded by the taxpayer's arguments to the contrary. We are referred to § 115(b) which provides that "every distribution is made out of earnings or profits to the extent thereof". But we think that all this means is that any corporate distribution not *made* in the form of a dividend declaration is nonetheless to be regarded as such to the extent that it represents the earnings or profits of the corporation.

The taxpayer also argues that § 115(d) prescribing capital gains treatment for any distribution which "is not out of increase in value of property accrued before March 1, 1913, *and is not a dividend,*" embraces in that treatment the unrealized appreciation of a distribution in kind which exceeds the earnings or profits of the corporation before such distribution. However, we think that § 115(d), as its caption "Other distributions from capital" indicates, is rather designed to subject to capital gains taxation those distributions which have left the capital of the corporation impaired. And concededly these distributions did not have that result. Indeed § 115(d) seems to us to support the position of the Commissioner rather than that of the taxpayer.

[1] The contention of the taxpayer encounters, we think, an insuperable obstacle in § 115(j) which requires a stockholder to include in his gross income the whole or any part of a dividend paid in property "at its fair market value at the time as of which it becomes income to the shareholder." No argument is made that a dividend in kind does not become income to the shareholder until its value is realized by sale or other disposition. Cf. Messer v. Commissioner, 1953, 20 T.C. 264; Helms Bakeries v. Commissioner, 1942, 46 B.T.A. 308. All that the taxpayer argues is that this section was designed to settle merely the *time* at which a property dividend is to be valued for income tax purposes. We cannot accept so limited a construction of § 115(j). Rather, we think that § 115(j) removes whatever doubt there might otherwise be that dividends in kind, as defined in § 115(a), are taxable as *dividends* to the full extent of their market value at the time of receipt by the shareholders.

Finally, the taxpayer, conceding that the accounting practices underlying the Commissioner's position "may be impeccable," argues that there is frequently a divergence between the tax laws and generally accepted business concepts. That may be true, but where, as here, the statutory pattern of taxation and the language used to accomplish it are both in accord with sound accounting and business practices, such an argument furnishes no ground for reading the statute otherwise than it is written. The taxpayer's error, it seems to us, stems from

attempting to tie the factors applicable to determining the *nature* of the distribution to its *valuation* after its nature has been determined. The appreciated value of the Southern Production stock was not, nor was it required to be, a distribution "out of" Southern's earnings or profits—it was simply a distribution *of* that appreciation which was not a part of Southern's earnings or profits or of its capital.

We hold that the Southern Production stock was taxable to the respondent at its full market value at the time of receipt.

Reversed.