MICHAEL P. ERBURU AND KATHRYN ERBURU, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51137. Filed January 31, 1955.

---

*George H. Koster, Esq.*, for the petitioners.
*T. M. Mather, Esq.*, for the respondent.

822

OPINION.

Van Fossan, *Judge:* The specific question is whether, under the circumstances of this case, petitioners received a taxable dividend upon the distribution to them of Bank of America stock by Transamerica, in which corporation they were stockholders.

On January 31, 1951, Transamerica made a distribution to its stockholders of Bank of America stock. The stock so distributed had a cost equivalent of $1.072 per share and a fair market value, as at the date of distribution, of $2.065 per share for each outstanding share of Transamerica capital stock. On such date, Transamerica had no accumulated earnings or profits, nor did it have any current earnings or profits during the year 1951. At all times pertinent, Transamerica had a deficit in excess of $100,000,000.

Respondent has determined that the foregoing distribution represents a taxable dividend to the extent of the excess of the fair market value of the stock distributed over and above Transamerica's cost thereof. Respondent thus takes the position, on brief, that the cost of the Bank of America stock in the amount of $1.072 per share represents a distribution under section 115 (d) of the Internal Revenue Code of 1939,[1] and that the increment of appreciation in value thereof, i. e., the difference between its cost and its fair market value at the time of distribution, representing a distribution of $0.993 a share, is taxable to the distributees as ordinary income. Respondent maintains that his position is fully supported by the rationale of the recent decisions of the Courts of Appeals for the Second and Third Circuits, respectively, in *Commissioner* v. *Hirshon Trust*, (C. A. 2, May 17, 1954) 213 F. 2d 523, reversing a Memorandum Opinion of this Court, certiorari denied 348 U. S. 861 (October 25, 1954), and *Commissioner* v. *Godley's Estate*, (C. A. 3, May 28, 1954) 213 F. 2d 529, reversing 19 T. C. 1082, certiorari denied 348 U. S. 862 (October 25, 1954).

Both the *Hirshon* and *Godley* cases arose from the same factual situation. That is to say, the taxpayers in both cases were stockholders in the same corporation and were the distributees of the stock of another corporation in the same corporate distribution. At the time of the distribution in kind, the fair market value of the property distributed exceeded its cost to the distributing corporation. Such appreciated value also exceeded the corporation's earnings or profits available for dividends when considered apart therefrom. The earn-

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. * * *

ings or profits were, however, sufficient to cover the cost basis of the property to the corporation.

In the *Godley* case before this Court the argument was advanced by respondent that statutory earnings or profits covered the cost or adjusted basis of the property distributed; that, therefore, the distribution in kind was "out of earnings or profits" under section 115 (a) of the 1939 Code [2] and backed by earnings or profits "to the extent" of cost or adjusted basis under section 115 (b) [3]; and that the distribution thus qualified as a dividend. Having once been characterized a dividend under section 115 (a) and (b), *supra*, the argument went, the distribution in kind was then taxable to the distributees to the extent of the full fair market value of the property received by operation of section 115 (j).[4] We rejected this argument and took the view that the fair market value of the distributed property was taxable as a dividend to the extent of the earnings or profits of the distributing corporation, without increase as a result of the appreciation in value over the cost of the distributed property; that to the extent the earnings or profits were insufficient to cover a charge equal to the fair market value of the distribution, the taxpayer had received a distribution in excess of earnings or profits; and that the amount of such excess was to be applied in reduction of the basis at which the taxpayers held their stock in the distributing corporation with any excess over such basis being taxable as a capital gain under section 115 (d), *supra*. The Memorandum Opinion filed in the *Hirshon* case shortly thereafter was based thereupon and was to the same effect.

On appeal of the *Godley* case, the Court of Appeals for the Third Circuit reversed, sustaining respondent's argument and saying, in part:

> Section 115 (a) and (b) define a dividend. For purposes of characterizing a distribution as a dividend vel non, i. e., whether it is out of earnings or profits, the sole relevant test is from the standpoint of the distributing corporation and from that standpoint fair market value is immaterial. The amount of a distribution, once it is determined that the distribution is a dividend, is governed by 115 (j) and is measured solely from the standpoint of the distributees and with

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * * * means *any* distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

[3] (b) SOURCE OF DISTRIBUTIONS.—For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

[4] (j) VALUATION OF DIVIDEND.—If the whole or any part of a dividend is paid to a shareholder in any medium other than money the property received other than money shall be included in gross income at its fair market value at the time as of which it becomes income to the shareholder.

reference to fair market value, and for that purpose the earnings or profits of the corporation are immaterial. * * *

In *Commissioner* v. *Hirshon Trust, supra,* the Court of Appeals for the Second Circuit reached the same result upon the same theory.

Without pausing to discuss the position taken by this Court and that taken by the Courts of Appeals in reversing, we would point up the reason why, in our opinion, the theory employed by those courts cannot, in any event, be extended to reach the conclusion advocated by respondent in the instant case.

Here, the distributing corporation had no earnings or profits, either current or accumulated, but had a substantial deficit. Nor would the appreciation in value of the property distributed, even if it were realized and taken into account, serve to allay such deficit. There being no earnings or profits available at the time the distribution in controversy was made, no part thereof could be characterized as a dividend. Respondent recognizes this fact and would not tax the distribution to the extent of the historical cost. But, respondent contends that, regardless of whether the distributing corporation has earnings or profits or a deficit, the test for determining the taxability of a distribution thereby to the distributees, as applied by the Courts of Appeals in *Godley* and *Hirshon* remains the same, i. e., whether such distribution impaired the capital thereof. Therefore, inasmuch as there is no showing here that the distribution in question to the extent of the appreciation in value of the property distributed impaired the capital of Transamerica, respondent seeks to tax such increment of appreciation to petitioners as ordinary income.

In our opinion, respondent's theory does not withstand analysis. The reasoning applied by the Courts of Appeals is grounded upon the premise that the distribution be first classified as a dividend under section 115 (a) and (b). As previously pointed out, respondent recognized that the distribution with which we are concerned could not be so characterized from the standpoint of the distributing corporation. If this be true, by what process could such a distribution become partly dividend when received by the stockholders? It is only by applying a different standard for determining the status of the distribution in the hands of the stockholders from that which section 115 requires be applied thereto in the hands of the corporation that respondent has a case. While Congress undoubtedly could have enacted a double standard, it has not, in our opinion, done so. Cf. *Commissioner* v. *Hirshon Trust, supra.*

Respondent's argument is based upon certain language of the Court of Appeals in the *Hirshon* case to the effect that the appreciated value of the property there distributed was not, nor was it required to be, out of the earnings or profits of the distributing corporation, but was

simply a distribution of that appreciation which was not a part of that corporation's earnings or profits, or of its capital. When read in context, however, such language does not convey the meaning ascribed to it by respondent. The court was there addressing itself to the application of section 115 (j), *supra*, for *valuation* of the distribution *after* the *nature* thereof had been previously determined. Section 115 (j), by its own wording, requires as a prerequisite to its application that a distribution first qualify as a dividend. This, the distribution in the instant case fails to do.

Nor is the increment of appreciation in value of the stock distributed by Transamerica taxable to petitioners as "other income" under the provisions of section 22 (a) of the 1939 Code.[5] See *Estate of Ida S. Godley*, 19 T. C. 1082, and the views expressed therein at page 1092, to which views we adhere.

We, therefore, hold that the distribution involved is taxable to the petitioners pursuant to the provisions of section 115 (d), *supra*, and, in accordance therewith, the fair market value of the property distributed will be applied first in reduction of the basis at which petitioners hold their stock in Transamerica with any excess being taxable as a capital gain. Inasmuch as it is stipulated that petitioners' basis for the Transamerica stock shares held by them is in excess of the amount of distributions received by petitioners therefrom during 1951, no part of the distribution in kind is representative of taxable income to petitioners.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, concurs in the result.

---

[5] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from * * * dividends, * * * or gains or profits and income derived from any source whatever. * * *

