HARRY HANDLEY CLOUTIER AND ELINOR S. CLOUTIER, HUSBAND AND WIFE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47445, 47446, 47447.   Filed September 19, 1955.

*James B. Howe, Esq.*, and *James Wm. Johnston, Esq.*, for the petitioners.

*John H. Welch, Esq.*, for the respondent.

### OPINION.

FISHER, *Judge:* Respondent determined deficiencies in income tax of the petitioners as follows:

| Petitioner | Year | Deficiency |
|---|---|---|
| Harry Handley Cloutier and Elinor Cloutier | 1948 | $66, 317. 46 |
| | 1949 | 170. 90 |
| Estate of Henri H. Cloutier, deceased, Harry H. Cloutier, | 1948 | 411, 779. 79 |
| Executor, and Margaret S. Cloutier, surviving wife | 1949 | 2, 845. 38 |
| John H. Davis and Harriet O. Davis | 1948 | 76, 494. 82 |
| | 1949 | 131. 66 |

The issues involved in the instant case concern the effect upon shareholders for tax purposes of (1) a distribution to them by a corporation of cash and appreciated property of a total fair market value in excess of the corporation's total accumulated and current earnings or profits where the adjusted basis to the corporation of the distributed property is *greater* than such total earnings or profits; and (2) a distribution of appreciated property of a fair market value in excess of the corporation's total earnings or profits where the adjusted basis of the property to the corporation is *less* than such earnings or profits.

---

[1] Proceedings of the following petitioners are consolidated herewith : Estate of Henri H. Cloutier, deceased, Harry H. Cloutier, executor, and Margaret S. Cloutier, surviving wife, Docket No. 47446 ; John H. Davis and Harriet O. Davis, husband and wife, Docket No. 47447.

Upon motion duly made and granted, a brief as *amici curiae* was filed herein by Randolph E. Paul, Esq., William C. Warren, Esq., and Carl J. Marold, Esq., in reply to which respondent filed a brief. Also upon motion duly made and granted, a brief on behalf of Julia H. Manges as *amicus curiae* was filed herein by Theodore Tannenwald, Jr., Esq.

All of the facts were stipulated by the parties. They are found accordingly and incorporated herein by this reference.

Petitioners are descendants, or spouses or representatives of descendants, of Rufus H. and Frances B. Smith. Rufus H. Smith died in 1916. Thereafter, during 1931, a corporation titled Rufus H. Smith Estate, Inc., was organized under the laws of the State of Washington. The corporation's authorized capital stock of 1,000 shares was issued in equal parts to the widow (who subsequently died during 1940) and the daughter (petitioner Margaret S. Cloutier) of Rufus H. Smith in exchange for property which included certain real property in Lincoln County, Oregon, and in Pierce County, Washington. These two pieces of real property are referred to herein respectively as the Oregon timberlands and the Washington timberlands. The adjusted basis of each of the timberlands in the hands of the two women became its adjusted basis to the corporation.

Some of the stock of the corporation was subsequently transferred by the widow by gift and devise. During the period involved herein the stock was owned and held as follows:

| Stockholder | Jan. 1, 1948, through Dec. 14, 1948 | Dec. 15, 1948, through Dec. 31, 1949 |
|---|---|---|
| | No. of shares | No. of shares |
| Petitioner Margaret S. Cloutier | 607 | 696½ |
| Petitioner John H. Davis | 107 | 151¾ |
| Petitioner Harry Handley Cloutier | 107 | 107 |
| Estate of Frances B. Smith (a trust) | 179 | 44¾ |
| Total | 1,000 | 1,000 |

At the beginning of 1948, the corporation had accumulated earnings or profits in the amount of $9,382.15. Its earnings or profits during 1948 were in the amount of $14,508.08. During 1948, the corporation distributed cash to its shareholders in the total amount of $13,500 as follows: $1,500 on July 1, 1948, $10,500 on December 24, 1948, and $1,500 on December 31, 1948. Each distribution was made to the shareholders in proportion to their stock holdings at the time thereof. On March 1, 1948, the corporation distributed the Oregon timberlands to its shareholders by distributing an undivided interest therein to each shareholder in proportion to the shareholder's stock interest on that date. At the time of its distribution, the adjusted

basis of the property to the corporation was $74,357.26, and its fair market value was $1,000,000.

Respondent contends that the proper computation of the portions of the 1948 distributions which constitute to the shareholders (a) a return of capital, and (b) a taxable distribution, is as follows:

| | |
|---|---:|
| Cash distribution (1.332018%) | $13,500.00 |
| Distribution in kind (98.667982%) | 1,000,000.00 |
| Total distributions (100%) | $1,013,500.00 |
| Earnings or profits available on Dec. 31, 1948 | $23,890.23 |
| Cash distributed as an ordinary dividend: 1.332018% × $23,890.23 | $318.22 |
| Cash distributed as a return of capital: $13,500 − $318.22 | $13,181.78 |
| Basis of assets distributed | $74,357.26 |
| Available earnings ($23,890.23 − $318.22) | 23,572.01 |
| Return of capital | 50,785.25 |
| Cash return of capital | 13,181.77 |
| (a) Total return of capital | 63,967.02 |
| Total distributions | 1,013,500.00 |
| (b) Taxable distribution | $949,532.98 |

In effect, respondent contends *inter alia* that the total fair market value of the timberlands constitutes a taxable dividend to the shareholders except to the extent that its adjusted basis to the corporation exceeds the total earnings or profits (as that excess is adjusted to reflect the cash also distributed that year), and that this excess constitutes a return of capital to the shareholders.

On the other hand, petitioners contend that the total fair market value of the cash and timberlands distributed in 1948 is taxable as dividend income to the shareholders only to the extent of the corporation's total earnings or profits (i. e., the accumulated earnings or profits plus current earnings or profits for 1948), and that the excess should be applied against the adjusted basis of the stock to each shareholder, with any amount in excess of that basis being taxed as a capital gain.

Before discussing the specific issues raised by the parties with respect to the peculiar facts of the 1948 distributions, we deem it appropriate to set out briefly the material facts with respect to the taxable year 1949 which also presents the primary issue that underlies the dispute in the instant case.

During 1949, the corporation's earnings or profits were in the amount of $14,904.64. On June 17, 1949, the corporation distributed the Washington timberlands to its shareholders by distributing undivided interests therein to each shareholder in proportion to the shareholder's stock interest on that date. At the time of its distribution, the adjusted basis of this property to the corporation was $455, and its fair market value was $18,000.

No other distribution was made by the corporation during 1949. However, a consent dividend of $14,449.64 was reflected in the tax returns filed for that year by the corporation and each shareholder. The corporation claimed a consent dividend credit of $14,449.64, and each shareholder included a proportionate share of that amount in gross income as a taxable dividend received, pursuant to the consent executed by him or her.

Respondent determined that the total value of the Washington timberlands constituted a taxable dividend to the shareholders during 1949 in addition to the consent dividend reported by them. Petitioners, however, contend that the sum of the fair market value of the Washington timberlands plus the amount of the consent dividend constitutes dividend income to the shareholders only to the extent of the earnings or profits of the corporation during 1949 (there being no accumulated earnings or profits at the beginning of that year due to the 1948 distributions), and that the excess of that sum over earnings or profits is taxable to the shareholders as capital gain since the adjusted basis of the stock to each of the shareholders had been reduced to zero by the 1948 distributions.

The primary issue which underlies the dispute between the parties for both years in question is whether the distribution in the instant case of property with a fair market value in excess of its adjusted basis to the corporation (we shall hereinafter refer to such property for convenience as appreciated property) is a taxable dividend to the shareholders to the extent that such value exceeds the total accumulated and current earnings or profits of the corporation. (Also for convenience, we shall use the term current earnings or profits to mean "earnings or profits of the taxable year" within the meaning of section 115 (a) of the 1939 Code.) It is our view that such distribution of property is a taxable dividend to shareholders only to the extent of the corporation's total accumulated and current earnings or profits with respect to the taxable year of the distribution, and that the excess of the distribution's fair market value over such earnings or profits constitutes a distribution of capital within the meaning of section 115 (d), Internal Revenue Code of 1939. Although two Courts of Appeals have recently held to the contrary (*Commissioner* v. *Hirshon Trust*, (C. A. 2, 1954) 213 F. 2d 523, reversing a Memo-

randum Opinion of this Court; and *Commissioner* v. *Godley's Estate*, (C. A. 3, 1954) 213 F. 2d 529, reversing 19 T. C. 1082), we respectfully decline to follow those holdings for the reasons hereinafter expressed.

At the outset, we believe that it is helpful to trace briefly the taxation of corporate distributions through its evolution since the enactment of the Income Tax Law (sec. 2 of the Act of October 3, 1913). Section B of that law provided *inter alia* that net income shall include gains, profits, and income derived from dividends. There was no definition of the term "dividends" in the law and section B thereof was held to include all dividends declared and paid by a corporation "whether from current earnings, or from the accumulated surplus made up of past earnings or increase in value of corporate assets, notwithstanding it accrued to the corporation in whole or in part prior to March 1, 1913." *Lynch* v. *Hornby*, 247 U. S. 339, 344 (1918).

Section 2 (a) of the Revenue Act of 1916, however, contained a proviso that the term "dividends" shall be held to mean any distribution by a corporation "out of its earnings or profits accrued since March first, nineten [*sic*] hundred and thirteen, and payable to its shareholder, whether in cash or in stock of the corporation * * * to the amount of its cash value." This provision was an early indication that Congress intended to limit the amount of a taxable dividend to "earnings or profits." This intention of Congress was further manifested by section 1211 of the Revenue Act of 1917 which added section 31 (a) to Title I of the 1916 Act. That section provided that the term "dividends" shall be held to mean any distribution made by a corporation "out of its earnings or profits accrued since March first, nineteen hundred and thirteen, and payable to its shareholders, whether in cash or in stock of the corporation * * * to the amount of the earnings or profits so distributed."

It should be noted that under the above provision and its predecessor in the 1916 Act it was possible for a corporation to designate the source of its distributions to shareholders. By designating sources other than earnings or profits accrued since March 1, 1913, for its distributions, a corporation could prevent its stockholders from receiving taxable dividend income until these other sources were first exhausted. This situation was in part eliminated, however, by section 1211 of the 1917 Act which added section 31 (b) to Title I of the 1916 Act. That section provided that any distribution made to shareholders "shall be deemed to have been made from the most recently accumulated undivided profits or surplus, * * * but nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen, but such earnings or profits may be distributed in stock dividends or otherwise, exempt from the tax, after the distribution of earnings and profits accrued since March first, nineteen hundred and thirteen, has been made." Although this

presumption clause effectively provided for distributions "out of" a corporation's earnings or profits by deeming them to be out of post-1913 earnings or profits, the clause did not so provide for distributions not declared out of earnings or profits. One source for such non-dividend distributions was an increase in the corporation's surplus due to the "writing-up" of appreciated assets on the company's books. Cf. *La Belle Iron Works* v. *United States*, 256 U. S. 377 (1921). An illustration of such a distribution is set out in Regulations 33 (revised), art. 4, par. 28, in part as follows:

Stock dividends.—Stock dividends declared from a surplus created from the revaluation of capital assets or a value placed upon trademark, good will, etc., do not represent a distribution of earnings or profits subject to tax in the hands of the recipient shareholder. * * *

Thereafter, Congress acted in the Revenue Act of 1918 specifically to correct this defect in the presumption clause. In this respect, House Report No. 767, 65th Congress, Second Session, states in part as follows (reported in 1939-1 C. B. (Part 2) 86, 88):

Under court decisions an addition to surplus through reappraisement of assets is not made out of earnings or profits, and therefore a distribution of the amount so added to surplus would not be a taxable dividend, since not made out of earnings or profits. In order to prevent tax evasion by this method, it is provided by the proposed bill that any distribution made shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed.

Accordingly, the presumption clause contained in section 201 (b) of the 1918 Act provided in part as follows:

Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed.

It is clear that the above presumption applied to distributions of property as well as cash for section 201 (a) of the 1918 Act provided that the term "dividend" means any distribution made by a corporation to its shareholder, "whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913 * * *." Thus, after the enactment of the 1918 Act, distributions of cash or property by a corporation to its shareholders were deemed to have been made out of earnings or profits unless they had been exhausted by prior distributions.

Thereafter, the presumption was made conclusive by section 201 (b) of the Revenue Act of 1921 in the following language:

For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; * * *

The 1921 Act also made provision for distributions which were not out of earnings or profits in section 201 (c) as follows:

Any distribution (whether in cash or other property) made by a corporation to its shareholders or members otherwise than out of (1) earnings or profits

accumulated since February 28, 1913, or (2) earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, shall be applied against and reduce the basis provided in section 202 for the purpose of ascertaining the gain derived or the loss sustained from the sale or other disposition of the stock or shares by the distributee.

In other words, section 201 (c) provided that if a distribution of cash or property was neither a dividend nor a tax-free distribution, it reduced the basis of the stock in the hands of the shareholders. Subsequently, section 201 (d) of the Revenue Act of 1924 provided that in the case of such a distribution in excess of the shareholder's basis, the excess shall be taxable as gain from the sale or exchange of property.

Thus, the general pattern of taxation of corporate distributions as intended by Congress is clearly indicated by the early revenue statutes, i. e., that distributions of cash and property were taxable as dividends to the extent of the corporation's post-1913 earnings or profits, and if the value of the distribution exceeded those earnings or profits, the excess was applied against and reduced the basis of the stock in the hands of the shareholders, with the excess over basis, if any, taxable as a capital gain. It should be noted at this point that none of the early revenue statutes specifically provided for the valuation of distributions of property. It is clear, however, that a distribution of property was valued at its fair market value at the time of its receipt by the shareholder. See *Peabody* v. *Eisner*, 247 U. S. 347 (1918) ; Regs. 45, art. 1544, and subsequent regulations.

The above pattern of taxation is clearly evident in the provisions of the Internal Revenue Code of 1939 which are applicable to the instant case. Section 115 (a) defines a dividend as "any distribution made by a corporation to its shareholders, whether in money or in other property, * * * out of its [accumulated post-1913 or current] earnings or profits." Section 115 (b) of the 1939 Code is the conclusive presumption clause which provides in part as follows:

For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

Section 115 (d) of the 1939 Code provides for the reduction of the basis of the stock to the shareholders and the taxation of the excess as capital gains, in the case of any distributions which are neither dividends nor distributions out of increase in value of property accrued before March 1, 1913 [2] (and are not otherwise excepted in section 115

---

[2] It should be noted that distributions out of earnings or profits accumulated before March 1, 1913, and those out of increase in value of property accrued before March 1, 1913, are both applied against and reduce the basis of the shareholders' stock pursuant to the express provisions of section 115 (b). The excess, if any, over basis is taxed as capital gain only if the distribution is out of pre-1913 earnings or profits. If such excess is out of pre-1913 increase in value of property, it is tax free pursuant to section 115 (d). This taxing pattern entered the revenue system via section 201 (b) and (d) of the 1924 Act. It still remains. See sec. 301 (c) (2) and (3) of the 1954 Code.

(d) because expressly provided for in other sections of the statute such as section 115 (c) and (f)). We note that it has been stated that section 115 (d) is "designed to subject to capital gains taxation those distributions which have left the capital of the corporation impaired." *Commissioner* v. *Hirshon Trust, supra,* p. 528. After very careful consideration of the above statement and its implications as applied to the instant case, we respectfully conclude that we must adhere to our own interpretation of section 115 (d) as expressed above. See Regs. 111, sec. 29.115–4; *Commissioner* v. *Timken,* (C. A. 6, 1944) 141 F. 2d 625, 630, affirming 47 B. T. A. 494; and *George M. Gross,* 23 T. C. 756, 771 (on appeal C. A. 2).

It is our view that sections 115 (a), 115 (b), and 115 (d) of the 1939 Code were evolved from the statutory provisions of the prior revenue acts set out above, and that the general pattern of taxation of corporate distributions established by the earlier provisions was adopted and maintained in the 1939 Code. The interpretation of section 115 (j) is, of course, of basic significance in considering the issue before us. We find nothing in its provisions, however, which prescribes alteration of the pattern so established.

Section 115 (j) provides as follows:

VALUATION OF DIVIDEND.—If the whole or any part of a dividend is paid to a shareholder in any medium other than money the property received other than money shall be included in gross income at its fair market value at the time as of which it becomes income to the shareholder.

In our opinion, this provision, which was added to the revenue system by section 115 (j) of the Revenue Act of 1936, is applicable in the instant case only to supply a rule for the valuation of the property distributed to the shareholders, and in this respect it is no more than a restatement of the valuation rule which existed at the time of its enactment and prior thereto. See *Peabody* v. *Eisner, supra;* and Regs. 86, sec. 115–7. As stated above, section 115 (a) of the Code defines a dividend as "any distribution made by a corporation to its shareholders, whether in money or in other property," out of its accumulated or current earnings or profits. Were section 115 (j) other than a restatement of the then existing valuation rule, it would, in our opinion, be inconsistent with section 115 (a) for it would require in effect that a distribution of property be taxed as a dividend to the extent of its full value even though such value exceeded the total of earnings or profits available for dividend purposes. We have been unable to find any basis for holding that such a result was intended.

Our view that distributions of cash or property are taxable as dividends only to the extent of the corporation's post-1913 earnings or profits is further supported by related sections of the 1939 Code. Section 112 (c) (2) provides that if a distribution of property or money as part of a reorganization "has the effect of a distribution of

a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) ["the sum of such money and the fair market value of such other property"] as is not in excess of his ratable share of the undistributed earnings and profits of the corporation * * *." See also Regs. 111, sec. 29.112 (g)–4 and 5. In this same respect, section 115 (g) (1) of the 1939 Code provides that if a redemption of stock is essentially equivalent to the distribution of a taxable dividend, the amount so distributed, "to the extent that it represents a distribution of earnings or profits * * *," shall be treated as a taxable dividend. Thus, Congress followed the established pattern of dividend taxation by taxing as dividends some distributions which had the effect of dividends or which were essentially equivalent to dividends only to the extent of post-1913 earnings or profits.

Applying our view of the pertinent Code provisions to the facts of the instant case, we hold that the contentions of petitioners are correct. Since the total fair market value of the cash and property distributed to shareholders during 1948 exceeded the corporation's total accumulated and current earnings or profits, the distributions constituted total taxable dividends in that year only in an amount equal to those earnings or profits. The excess value of the distribution is to be applied against and reduce the adjusted basis of the stock in the hands of each shareholder with the excess over that basis being taxed as a capital gain.

As indicated at the outset, the 1948 distributions are complicated (from respondent's standpoint only) by the fact that the adjusted basis of the Oregon timberlands exceeded the corporation's total earnings or profits. In view of our holding above, however, this fact is not here material and we need not consider respondent's method of computing the portion of the 1948 distributions which constitutes a return of capital to the shareholders.

With respect to the 1949 distribution of property and the consent dividend, the result of our holding herein is similar to that of 1948. It should be noted, however, that there were no accumulated earnings or profits of the corporation at the beginning of 1949. It is unnecessary for us to decide in the instant case whether the 1948 distributions decreased the corporation's earnings or profits (1) by the total fair market value of the cash and property distributed in that year, or (2) by the total amount of cash plus the adjusted basis to the corporation of the property distributed. Cf. *R. D. Merrill Co.*, 4 T. C. 955, 960–963. See also sec. 312 (a) (3) of the 1954 Code. Under either view, there were no accumulated earnings or profits at the beginning of 1949, and the total amount of the distribution and consent dividend during 1949 was dividend income to the shareholders

only in an amount equal to the earnings or profits of that year. Moreover, since the adjusted basis of the stock to each shareholder had been reduced to zero by the 1948 distributions, the excess is taxable to the shareholders as capital gain pursuant to section 115 (d) of the 1939 Code.

We think it would serve no useful purpose for us to review in detail the many earlier decisions which have dealt with one phase or another of the issue here presented. We content ourselves with a brief quotation, with which we are fully in accord, from the Opinion in *Commissioner* v. *Hirshon Trust, supra*, dealing with three cases which are suggested in support of respondent's contention. The court said (p. 526):

The cases in the Federal Courts, however, do not give us any clear signal. In Binzel v. Commissioner, 2 Cir., 75 F. 2d 989, certiorari denied 1935, 296 U. S. 579, 56 S. Ct. 90, 80 L. Ed. 409, relied on by the Commissioner, it did not appear whether there was sufficient surplus to cover the full market value of the distribution in kind. If there was, then that case did not reach the issue before us. If there was not, we would hesitate to accept the alternative basis for decision, namely, that the distributed property was *acquired* out of post-1913 earnings or profits and retained that character upon distribution. See Paul, Selected Studies in Federal Taxation, 2d Series (1938), pp. 174–176; Molloy, Some Tax Aspects of Corporate Distributions in Kind, 6 Tax L. Rev. 57, 74–76 (1950). For the same reason we find Commissioner of Internal Revenue v. Wakefield, 6 Cir., 1943, 139 F. 2d 280, also cited by the Commissioner, not persuasive. The concurring opinion of Judge Whitaker in Guinness v. United States, 1947, 73 F. Supp. 119, 109 Ct. Cl. 84 *is* an acceptance of the Commissioner's position, but the decision of the majority went upon other grounds, based on facts not involved here. * * *

Respondent contends as an alternative in the instant case that an apportionment between ordinary income and return of capital should be made in the same ratio as the adjusted basis of the timberlands bears to the earnings or profits. He contends that this ratio with respect to 1948 is $23,890.23 over $74,357.26, and that applying this ratio to the fair market value of the Oregon timberlands ($1,000,000), $321,289.81 is taxable as ordinary income and the balance, $678,710.19, is a distribution of capital under section 115 (d). Our attention has been called to no authorities which support this contention. In view of our discussion above, however, we hold that the applicable provisions of the Code do not authorize the apportionment theory so advocated.

Respondent contends as a further alternative that a corporate distribution not out of capital should be taxed as ordinary income under section 22 (a) of the 1939 Code "when earnings or profits are insufficient to classify the distribution as out of earnings or profits." Section 22 (e) of the 1939 Code, however, provides that distributions by corporations "shall be taxable to the shareholders as provided in section 115." It is our view that corporate distributions have thereby

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

been taken out of the operation of section 22 (a) and we therefore do not accept respondent's contention to the contrary. See *Estate of Ida S. Godley*, 19 T. C. 1082, 1092, reversed on other grounds 213 F. 2d 529, cited *supra*, and *Michael P. Erburu*, 23 T. C. 820, 826.

The parties have stipulated the amounts distributed in both taxable years to each of the petitioners as well as the basis of the stock to each of them. The amount of the deficiencies, if any, due pursuant to our holding herein will, of course, be determined under Rule 50. In two of the dockets in the instant case (No. 47445 and No. 47447), however, the petitioners pleaded limitations as a bar to this proceeding with respect to the taxable year 1948. The deficiency notice in each instance was issued more than 3 but less than 5 years after the return was filed. Respondent pleaded facts in his Amendment to Answer in each case to the effect that petitioners omitted from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, and that therefore the deficiency notice was timely in each case pursuant to section 275 (c) of the 1939 Code. In view of our holding above with respect to the corporate distributions, respondent has failed to establish the omissions from gross income necessary to extend the period of limitations beyond 3 years. Accordingly, there are no deficiencies for 1948 in those two cases.

*Decisions will be entered under Rule 50.*